NO. 12-04-00124-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
THE STATE OF TEXAS                                   §                 APPEAL FROM THE 

 
FOR THE BEST INTEREST                            §                 COUNTY COURT AT LAW

 
AND PROTECTION OF L.C.                           §                 CHEROKEE COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Appellant L.C. appeals from an order of commitment for temporary inpatient mental health
services and an order to administer psychoactive medication. After a hearing without a jury, the trial
court ordered L.C. committed to Rusk State Hospital for a period not to exceed ninety days and
entered an order authorizing the Texas Department of Mental Health and Mental Retardation to
administer psychoactive medication to L.C. In two issues, L.C. asserts the evidence is legally and
factually insufficient to support those orders. We affirm.
 
Background
            On April 5, 2004, an application for court-ordered temporary mental health services was filed
requesting the court commit L.C. to Rusk State Hospital for a period not to exceed ninety days. The
application was supported by a certificate of medical examination for mental illness, prepared by a
physician, Dr. C. Cuellar, who had examined L.C. on April 2. Dr. Cuellar diagnosed L.C. as
suffering from dementia. He found that L.C. is mentally ill, likely to cause serious harm to herself,
and is suffering severe and abnormal mental, emotional, or physical distress, is experiencing
substantial mental or physical deterioration of her ability to function independently, and is unable
to make a rational and informed decision as to whether to submit to treatment. 
            Dr. Cuellar reached these conclusions because, on April 2, L.C. was hostile, out of touch with
reality, and paranoid. When picked up on March 24, 2004, she had been wandering aimlessly and
was confused, disoriented, and very malnourished. Dr. Cuellar found that L.C. presents a substantial
risk of serious harm to herself or others if not immediately restrained, an opinion he based on L.C.’s
behavior and on evidence of severe emotional distress and deterioration in L.C.’s mental condition
to the extent that she cannot remain at liberty. Dr. Cuellar formed this opinion because L.C. was
insulting to caregivers and out of touch with reality and due to her actions of May 24 as set out
above.
            On April 7, 2004, L.C. was examined by Dr. Sethurama Srinivasan who then also prepared
a certificate of medical examination for mental illness. Dr. Srinivasan diagnosed L.C. with
schizophrenia and indicated that L.C. is mentally ill and likely to cause serious harm to herself. He
further determined that she is suffering severe and abnormal mental, emotional, or physical distress,
is experiencing substantial mental or physical deterioration of her ability to function independently,
which is exhibited by her inability to provide for her basic needs, and she is unable to make a rational
and informed decision as to whether or not to submit to treatment. He came to these conclusions
because L.C. had been wandering aimlessly in the streets and was hostile and delusional. Further,
she was not taking care of her own needs. 
            Dr. S. Siddiqui testified at the hearing, explaining that he just took over as L.C.’s treating
physician. He agreed with Dr. Srinivasan’s diagnosis that L.C. is suffering from schizophrenia. He
testified that she is likely to cause serious harm to herself. He determined that L.C. is suffering
severe and abnormal mental, emotional, or physical distress and is unable to take care of her daily
needs. He explained that, before coming to the hospital, she was wandering aimlessly. She was not
eating or drinking. She was confused, very thin, and malnourished when found. When he tried to
talk to her about what led her to come to the hospital, she said people were trying to harm her. She
stopped eating and drinking because of paranoid and delusional beliefs. The doctor stated that Rusk
State Hospital is the least restrictive available option for L.C. at this time. 
            On cross-examination, Dr. Siddiqui testified that L.C.’s condition has deteriorated. She is
more paranoid, hostile, and aggressive. She feels people are trying to poison her. With a lot of
prompting, she will eat. The doctor considered her weight to have been life-threatening just before
coming to the hospital. He explained that not eating or drinking and being poorly nourished can be
harmful to L.C.’s health. The doctor believes her eating habits result from her mental illness. 
Further, she refuses to take any medication because she feels she does not need any medication.
            In response to questions by the court, Dr. Siddiqui explained that L.C. would not eat because
she thought people were trying to poison her food. She refused food and water for several days. 
            L.C. testified in her own behalf. She disagreed with the doctor’s testimony, saying it is
absurd and ridiculous that she would make up stories like that. She said she does not believe people
are trying to hurt her like that. She denied wanting to hurt herself or talking about “those things.” 
She has concerns about the food at the hospital, not because it is poison, but just because it is not any
good and does not agree with her metabolism. It hurts her. If she were at home, she would be eating
things that are better for her. She would eat good, nutritional foods that are good for her digestion. 
            If released she would go to her apartment. She lives alone, does her own cooking and
shopping, and keeps house to the best of her ability. She has friends there and she receives Social
Security benefits. She denied being psychotic and requested the court order be removed because it
is causing some of her family members to be verbally abusive. She denied ever telling anyone she
would hurt them. She denied wandering aimlessly and said she was in her apartment when she was
picked up. She explained that she has been harassed over the telephone and the harassment has been
going on for quite some time. She said that is stressing her out but, other than that, she is not
mentally ill. 
            L.C. testified that she does not think people are trying to poison her and she eats well. She
explained that she eats four or five meals a day of an adequate amount, as she needs it. She admitted
having felt weak because of a lack of food but explained that was mostly at the hospital because she
cannot get the right nutrition. She wanted to go home because she felt that was better for her.
            On cross-examination, L.C. was asked if she recalled telling any doctor that she felt people
were trying to poison her. She responded by saying that the “psychological drugs” are harmful
chemicals that are poisonous to your system. She said she does not believe anyone is trying to
deliberately poison her. She denied ever telling a doctor that she would not eat because her food was
being poisoned. She said that issue was not discussed at all.
             The trial court entered an order for temporary inpatient mental health services after
determining that the evidence supports the allegations that L.C. is mentally ill and that she is likely
to cause serious harm to herself. The court ordered L.C. committed to Rusk State Hospital for a
period not to exceed ninety days. 
            A separate hearing was then held on the State’s application for court ordered administration
of psychoactive medication. Dr. Siddiqui testified that L.C., who suffers from schizophrenia, had
refused to take medication voluntarily. He stated that the medications listed in the exhibit attached
to the application are in the proper course of treatment for L.C. and in her best interest. She would
likely benefit from the medications and the benefits outweigh the risks. Her hospital stay will likely
be shortened if medications are used.
            On cross-examination, the doctor said he tried to talk to L.C. a couple of times about the use
of medication. But, due to the paranoia and delusional beliefs, she did not indicate an awareness of
the nature of the conversation. However, she did tell him that she did not need to take any
medication. She did not give a reason; she just said she did not want to use medications. The doctor
hopes the medications will lead to an earlier release.
            L.C. testified and denied needing any medication. She said she is not psychotic, does not
hear voices, does not hallucinate, and is not confused. She prefers not to use the medications. If she
is under a court order, “they” threaten her with it. She felt the medications were harmful to her
health. She stated she has a lot of pain in her neck, back, and shoulder, is emotionally distraught,
and under stress. She requested the court to order her release. At the close of evidence, the court
entered an order to administer psychoactive medication for the period of temporary commitment.
 
Standard of Review
            In a legal sufficiency review where the burden of proof is clear and convincing evidence, the
reviewing court must consider all of the evidence in the light most favorable to the finding to
determine whether a reasonable trier of fact could have formed a firm belief or conviction that its
finding was true. In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). The reviewing court must assume
that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do
so. Id. A court should disregard all evidence that a reasonable factfinder could have disbelieved or
found to have been incredible. Id. 
            In addressing a factual sufficiency of the evidence challenge, we must consider all the
evidence in the record, both that in support of and contrary to the trial court’s findings. In re C.H.,
89 S.W.3d 17, 27-29 (Tex. 2002). This court must give due consideration to evidence that the
factfinder could reasonably have found to be clear and convincing. Id. at 25. We must determine
whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about
the truth of the State’s allegations. Id. We must consider whether disputed evidence is such that a
reasonable trier of fact could not have reconciled that disputed evidence in favor of its finding. In
re J.F.C., 96 S.W.3d at 266. Appellate courts retain deference for the constitutional roles of the
factfinder. In re C.H., 89 S.W.3d at 26. The trier of fact is the exclusive judge of the credibility of
the witnesses and the weight to be given their testimony. See id. at 27; In re J.J.O., 131 S.W.3d 618,
632 (Tex. App.–Fort Worth 2004, no pet.).
 
Commitment Order
            In her first issue, L.C. asserts the evidence is neither legally nor factually sufficient to support
the order of commitment. She contends that the evidence merely shows that she is mentally ill and
may be in need of hospitalization. She argues that the evidence does not show an overt act or
continuing pattern of behavior tending to confirm that L.C. is likely to cause serious harm to herself. 
Thus, she argues, the State failed to meet its evidentiary burden under the statute. 
            The trial judge may order a proposed patient to receive court-ordered temporary inpatient
mental health services if the judge or jury finds, from clear and convincing evidence, that the
proposed patient is mentally ill and, as a result of the mental illness he is likely to cause serious harm
to himself, is likely to cause serious harm to others, or is (i) suffering severe and abnormal mental,
emotional, or physical distress, (ii) experiencing substantial mental or physical deterioration of his 
ability to function independently, which is exhibited by his inability, except for reasons of indigence,
to provide for his basic needs, including food, clothing, health, or safety, and (iii) unable to make
a rational and informed decision as to whether or not to submit to treatment. Tex. Health &
Safety Code Ann. § 574.034(a) (Vernon 2003). To be clear and convincing under the statute, the
evidence must include expert testimony and, unless waived, evidence of a recent overt act or a
continuing pattern of behavior that tends to confirm either the likelihood of serious harm to the
proposed patient or others or the proposed patient’s distress and the deterioration of his ability to
function. Tex. Health & Safety Code Ann. § 574.034(d) (Vernon 2003).
            The State provided expert testimony explaining that L.C. is mentally ill and describing her
behavior and statements. Dr. Cuellar stated in his certificate of medical examination that, on March
24, prior to hospitalization, L.C. was wandering aimlessly, confused, disoriented, and malnourished. 
He described her as hostile, out of touch with reality, and paranoid. Dr. Siddiqui testified that he
believed L.C. was likely to cause harm to herself because she was wandering the streets aimlessly
before coming to the hospital. Further, she had stopped eating and drinking because she was afraid
that people were poisoning her food. This is expert testimony of a continuing pattern of behavior,
refusing to eat and drink, and a recent overt act, wandering aimlessly in the streets, that tends to
confirm the likelihood of serious harm to herself. The trial court could have disbelieved L.C.’s
testimony to the contrary. See In re J.F.C., 96 S.W.3d at 266.
            Considering all the evidence in the light most favorable to the findings, we conclude a
reasonable trier of fact could have formed a firm belief or conviction that L.S. is likely to cause
serious harm to herself. See In re J.F.C., 96 S.W.3d at 266. The evidence is legally sufficient to
support the trial court’s order. See id.
            In addressing L.C.’s factual sufficiency complaint, we consider the evidence, giving due
consideration to evidence the factfinder could reasonably have found to be clear and convincing. 
In re C.H., 89 S.W.3d at 25. L.C. denied saying she believed people are trying to poison her and
denied wandering aimlessly. She claimed she would eat well if she were at home. The trial court
was entitled to disbelieve L.C.’s testimony and disregard evidence contrary to the State’s position. 
See id. at 27. Accordingly, in light of the entire record, the evidence that the trial court could not
have credited in favor of its findings is not so significant that it could not reasonably form a firm
belief or conviction that L.C. is mentally ill and is likely to cause serious harm to herself. See id. 
Thus, the evidence is factually sufficient to support the trial court’s findings. Because we hold the
evidence is both legally and factually sufficient to support the trial court’s order, we overrule L.C.’s
first issue.
 
Psychoactive Medication
            In her second issue, L.C. asserts the evidence is legally and factually insufficient to support
the order authorizing administration of psychoactive medication. She argues that the State did not
present clear and convincing evidence that she lacked the capacity to make a decision regarding
administration of psychoactive medication. 
            The court may enter an order authorizing the administration of psychoactive medication if
it finds by clear and convincing evidence that the patient is under an order for temporary or extended
mental health services, the patient lacks the capacity to make a decision regarding the administration
of the proposed medication, and treatment with the proposed medication is in the best interest of the
patient. Tex. Health & Safety Code Ann. § 574.106(a) (Vernon 2003). In determining that there
is a need for psychoactive medication, the court is required to consider the following:
 
              (1) the patient’s expressed preferences regarding treatment with psychoactive medication;

              (2) the patient’s religious beliefs;

              (3) the risks and benefits, from the perspective of the patient, of taking psychoactive medication;

              (4) the consequences to the patient if the psychoactive medication is not administered;

              (5) the prognosis for the patient if the patient is treated with psychoactive medication; and

              (6) alternatives to treatment with psychoactive medication.


Tex. Health & Safety Code Ann. § 574.106(b) (Vernon 2003).
            At the hearing on the State’s application for court-ordered administration of psychoactive
medication, Dr. Siddiqui testified that L.C. refuses to take her medication voluntarily. The doctor
testified that treatment with the medications indicated on the application is in L.C.’s best interest and
would shorten her hospital stay. On cross-examination, Dr. Siddiqui testified that, due to her
delusional beliefs, L.C. did not indicate an awareness of the nature of his conversation regarding her
medications. 
            Considering all of the evidence in the light most favorable to the finding, we conclude that
a reasonable trier of fact could have formed a firm belief or conviction that L.C. lacks the capacity
to make a decision regarding the administration of psychoactive medication. The evidence is legally
sufficient to support the order. See In re J.F.C., 96 S.W.3d at 266.
            Considering all of the evidence and giving due consideration to evidence the factfinder could
reasonably have found to be clear and convincing, we determine the evidence is also factually
sufficient. The trial court could disregard L.C.’s testimony that she did not need any medication and
rely entirely on the doctor’s testimony. See In re C.H., 89 S.W.3d at 27. The doctor indicated that
L.C. did not understand the nature of the discussions they had about medications. Accordingly, the
evidence is such that the trial court could reasonably form a firm belief or conviction about the truth
of the State’s allegations. See id. at 25. Thus, the evidence is factually sufficient to support the trial
court’s findings. We reject L.C.’s argument that the order authorizing administration of
psychoactive medication is not supported by clear and convincing evidence. See Tex. Health &
Safety Code Ann. § 574.106(a). We overrule L.C.’s second issue.

Conclusion
            The evidence is legally and factually sufficient to support both the trial court’s order of
commitment for temporary inpatient mental health services and the order for administration of
psychoactive medication.
            We affirm the trial court’s orders of commitment for temporary inpatient mental health
services and for administration of psychoactive medication.
 
 
 
                                                                                                    SAM GRIFFITH 
                                                                                                               Justice
 
 
Opinion delivered October 29, 2004.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.


(PUBLISH)













COURT OF APPEALS
TWELFTH COURT OF APPEALS DISTRICT OF TEXAS
JUDGMENT
 
OCTOBER 29, 2004
 
NO. 12-04-00124-CV
 
THE STATE OF TEXAS FOR THE
BEST INTEREST AND PROTECTION OF L.C.
 
 
 Appeal from the County Court at Law
 of Cherokee County, Texas. (Tr.Ct.No. 30,529)
 
                                                                                                                                                           
 
 
                                    THIS CAUSE came to be heard on the appellate record and briefs filed herein,
and the same being inspected, it is the opinion of this court that there was no error in the judgment.
                                    It is therefore ORDERED, ADJUDGED and DECREED that the judgment
of the court below be in all things affirmed, and that this decision be certified to the court below
for observance.
                                    Sam Griffith, Justice.
                                    Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.


THE STATE OF TEXAS
M A N D A T E
*********************************************
 
 
TO THE COUNTY COURT AT LAW of CHEROKEE COUNTY, GREETING: 
 
            Before our Court of Appeals for the 12th Court of Appeals District of Texas, on the 29th day
of October, 2004, the cause upon appeal to revise or reverse your judgment between
 
THE STATE OF TEXAS FOR THE
BEST INTEREST AND PROTECTION OF L.C.
 
NO. 12-04-00124-CV; Trial Court No. 30,529
 
Opinion by Sam Griffith, Justice.

was determined; and therein our said Court made its order in these words:

            “THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same
being inspected, it is the opinion of this court that there was no error in the judgment.

            It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below
be in all things affirmed, and that this decision be certified to the court below for observance.”

            WHEREAS, WE COMMAND YOU to observe the order of our said Court of Appeals for
the Twelfth Court of Appeals District of Texas in this behalf, and in all things have it duly
recognized, obeyed, and executed.

            WITNESS, THE HONORABLE JAMES T. WORTHEN, Chief Justice of our Court of
Appeals for the Twelfth Court of Appeals District, with the Seal thereof affixed, at the City of Tyler,
this the ______ day of __________________, 200____.
 



                                    CATHY S. LUSK, CLERK
 
 
                                    By:_______________________________
                                         Deputy Clerk